CARL SANDBURG VILLAGE CONDOMINIUM ASSOCIATION NO. 1 *et al.*, Plaintiffs-Appellants, v. CARL SANDBURG VILLAGE CONDOMINIUM HOMEOWNERS' ASSOCIATION *et al.*, Defendants-Appellees (Faulkner House Condominium Association *et al.*, Defendants-Appellants; First Condominium Development Company *et al.*, Intervening Defendants-Appellees).

First District (2nd Division)   No. 86—3480

Opinion filed December 22, 1987.—Modified on denial of rehearing October 18, 1988.

2

Alan P. Solow, Daniel P. Shapiro, and Mindy B. Gordon, all of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago, for appellant Carl Sandburg Village Condominium Association No. 7.

Reuben L. Hedlund, Melissa A. Apcel, Kenneth S. Goodsmith, and Robert L. Stout, Jr., all of Latham & Watkins, of Chicago, for appellants Carl Sandburg Village Condominium Association Nos. 1 and 2.

Robert M. Birndorf, of Law Offices of Beryl A. Birndorf, of Chicago, for appellant Faulkner House Condominium Association.

David I. Herbst and Ronald A. Damashek, both of Portes, Sharp, Herbst & Kravets, Ltd., of Chicago, for appellee Eagle II.

Richard J. Gray, of Jenner & Block, of Chicago, for appellee First Condominium Development Company.

Merle L. Royce, of Chicago, for appellee Elliott House Condominium Association.

Michael R. Feagley and Lawrence A. Rosen, both of Mayer, Brown & Platt, of Chicago, for appellee Lowell House Condominium Association.

Rosemarie J. Guadnolo and Thomas F. Sax, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellee Carl Sandburg Village Condominium Association No. 3.

Allan Goldberg, of Chicago, for Carl Sandburg Village Condominium Homeowners' Association.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The dispute in this case is over who has the right and responsibility to control, maintain, and repair certain concrete structures located in Carl Sandburg Village (the Village) in Chicago, Illinois. The Village is governed both by individual condominium associations and a "master" or "umbrella" homeowners' association (hereinafter HOA), the latter consisting of representatives from each of the individual associations. Plaintiffs filed a complaint seeking a declaratory judgment that the individual associations have the right and responsibility referred to above. Several of the defendants filed counterclaims alleging that HOA has such authority and duty and that the plaintiffs were equitably estopped from claiming otherwise. On cross-motions for summary judgment, the circuit court ruled that the HOA had the right and obligation to administer and repair these structures.

Carl Sandburg Village consists of nine condominium buildings, 60 townhouses scattered throughout the Village, shops, and recreational facilities, all of which are connected by a series of unenclosed walks, malls, paths, driveways, and public streets. The malls cover approximately seven acres, and underneath the condominium buildings and the malls there are parking garages. The ceilings of the garages also form the bottom part of the malls. The garages are attached by entryways to adjoining condominium buildings, but there is no garage for townhouse owners. The condominium unit owners each own a proportionate share of the garage adjoining their building.

The issue here focuses upon the parking garages and related structures, including the concrete slabs above the garages (which also function as garage roofs), the concrete columns supporting the garage roofs, and the perimeter metal slip-type expansion joints (located where the concrete slabs abut the buildings), along with the adjacent driveways and sidewalks. The foregoing items were referred to in the complaint as "concrete structures," and the same expression will be used herein as a neutral, convenient description of the subject items. The appellees object to the creation of a term not in the controlling documents which they assert is self-serving. They suggest the word "malls," but we believe that to use the term "malls" would be just as self-serving as if we were to call them "parking garages," as certainly the appellants would prefer; therefore, in this opinion we shall use the less contentious term "concrete structures."

The nine condominium buildings are governed by six individual associations established pursuant to the Condominium Property Act (Ill. Rev. Stat. 1985, ch. 30, par. 301 et seq.); the townhouse owners have

their own association. Each unit owner is a member of one of the seven individual associations and also a member of the HOA. The HOA has a 14-member board of directors which consists of two individuals from each of the individual associations.

The controlling documents are the "Declaration of Covenants, Conditions, Restrictions and Easements," which sets forth HOA's authority and obligations (hereinafter HOA Declaration), and seven separate "Declarations of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws" (hereinafter Condominium Declarations), which for our purposes are identical and delineate the authority and obligations of each of the individual associations. The HOA Declaration by its own terms takes precedence over the Condominium Declarations.

Plaintiffs are two of the seven individual associations, numbers 1 and 2; the defendants are the other individual associations, the HOA, and the intervenor-developers.[1] The intervenors and defendant Lowell House Condominium Association filed counterclaims alleging that the HOA had the duty and responsibility to administer and repair the structures at issue herein, and that the plaintiffs were estopped from maintaining to the contrary.

Cross-motions for summary judgment were brought by the plaintiffs and the developers, the latter being joined by Lowell House Condominium Association and Elliott House Condominium Association. On November 13, 1986, the circuit court entered an order which declared that HOA "has the exclusive authority, duty and responsibility to protect, defend, repair, maintain, improve and replace *** the malls" of the Village. The court stated that the malls included "the mall wearing surfaces, the 'garage roof slabs,' and concrete supporting columns and the slip type expansion joints between the malls and the adjacent highrise buildings, and the expansion joints within the garage roofs, but not including the garage walls and the garage floors." The order also recited that there was no just reason to delay enforcement or appeal of the order.

The plaintiffs filed a timely appeal, in which defendants Carl Sandburg Village Condominium Association No. 7 and Faulkner House Condominium Association joined as appellants. HOA also filed a separate notice of appeal wherein it joined the appeal of the other appellants.

---

[1]Shortly after the filing of the complaint, First Condominium Development Company and Eagle II, the developers who converted the Village from rental apartments to condominiums, were granted leave to intervene in this action.

Opinion

The appellants assert that the construction of the condominium declarations is a question of law, and that consequently this court should review the claims of the parties *de novo*. The appellees contend that because the circuit court's determination regarding declaratory relief is discretionary, its decision should not be disturbed absent an abuse of discretion.

■■ ■ The construction of condominium declarations, as the appellants correctly maintain, is a pure question of law. (*Damen Savings & Loan Association v. Johnson* (1984), 126 Ill. App. 3d 940, 944, 467 N.E.2d 1139; *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 661, 440 N.E.2d 1073.) Yet it is also true that a trial court's decision whether to grant declaratory relief is discretionary. *Howlett v. Scott* (1977), 69 Ill. 2d 135, 142, 370 N.E.2d 1036.

■■ The appellees refer this court to a case which is factually similar to the case at bar: *Feeley v. Michigan Avenue National Bank* (1986), 141 Ill. App. 3d 187, 490 N.E.2d 15. In that case the circuit court granted declaratory judgment based on its interpretation of a lease, which, the court recognized, involved a question of law. The appellate court held that the trial judge's decision was subject to a "searching" appellate review and that his discretionary decision about whether to grant or deny declaratory relief was not entitled to the same deference as it would merit in other contexts. (*Feeley*, 141 Ill. App. 3d at 190-91; see also *Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 381, 481 N.E.2d 1004.) In a previous case, this court described searching appellate review as being independent review which is justifiable because "declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility." (*Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436-37, 425 N.E.2d 429.) Accordingly, this court will conduct a searching review of the decision of the circuit court.

The nature of the problem confronting us approaches the Solomonic: since portions of these completely integrated concrete structures are common to both the garages and the malls they can fairly be said to be "claimed" by both. The options available for resolving this dispute are best explained in a memorandum drafted by counsel for the HOA prior to the initiation of this litigation. He concluded as follows:

"Under a broad construction, 'malls' could include all easement areas (the mall wearing surface, the garage roof slabs, the con-

**6**

crete supporting columns in the garage below, and the slip-type expansion joints between the malls and the adjacent high-rise buildings). Under a narrow construction, 'malls' could mean only the area above the ground level surface area."

At first glance, under counsel's narrow definition the malls consist solely of air space. The appellees contend that this is the position taken by the appellants in the circuit court. We disagree. Rather, the appellants were attempting to argue that the malls encompass only the surfaces of the concrete structures. Indeed, in another portion of the aforementioned memorandum, counsel clarified that the narrow definition does "not include any of the areas *below* the surface plane" (emphasis added); however, he never claimed that the malls do not encompass the surface planes thereof.

The parties agree that we must arrive at the appropriate definition of the word "malls" by examining solely the language of the relevant documents. (*Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 457 N.E.2d 1226; *Vigilante v. National Bank of Austin* (1982), 106 Ill. App. 3d 820, 436 N.E.2d 652.) The HOA Declaration includes in its definition of access areas the term "malls." (HOA Declaration, par. 1.10.) Moreover, that same document defines the phrase "community facilities" as being the recreational facilities and the access areas. (HOA Declaration, par. 1.12.) Therefore, the malls are necessarily one of the many components of the community facilities. Moreover, the HOA Declaration clearly indicates that the HOA has the right to "change, improve or modify the Community Facilities." (HOA Declaration, par. 3.03(g); accord HOA Declaration, Recitals M(i), N.) These provisions unmistakably grant HOA dominion over the malls. Having determined that HOA controls the malls, we must next ascertain what constitutes the malls.

After analyzing all of the relevant provisions of the documents forming the subject matter of this case, we find no clear answer to the question of whether the concrete structures are considered part of the malls, and thus under HOA's control, or whether they are part of the garages, and thereby the responsibility of the individual associations. Therefore, in order to determine what is considered a mall we must discover the intent of the parties as evidenced by the HOA Declaration.

Carl Sandburg Village was designed as an independent, self-sufficient community. Paragraph 3.03 of the HOA Declaration provides as follows:

"Every Owner of a Dwelling Unit on the Premises or the Related Property and each Owner of Adjacent Property shall have

the right and easement of use and enjoyment in, to and of the Community Facilities ***, which right and easement shall include but not be limited to easements for pedestrian and vehicular ingress and egress and use of open spaces and other Community Facilities."

Therefore, the HOA Declaration demonstrates the intent that the community facilities be used by, and be available to, all residents of the Village, and not to just the residents of an individual association where certain of these facilities happen to be located. Since all residents are entitled to use of the facilities, it seems reasonable that all residents, as represented by the HOA, should have the corollary responsibility to maintain them.

■ Accordingly, this court holds that the concrete structures in dispute are under the dominion of the HOA. The circuit court properly concluded that the concrete structures are to be administered and maintained by the HOA, while the floors and walls of the parking garages are to be controlled and repaired by the individual associations.

Affirmed.

BILANDIC and EGAN, JJ., concur.